UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ARTHUR EVANS,

                           Petitioner,

            v.                                          **DECISION AND ORDER**

DANIEL SEWKOWSKI,                                       03-CV-416S

                           Respondent.

## I. INTRODUCTION

Petitioner Arthur Evans ("Evans") seeks a writ of habeas corpus to set aside a Judgment of Conviction of the New York State Supreme Court, County of Erie, entered on February 4, 1999.[1] For the reasons set forth herein, the petition is denied.

## II. BACKGROUND

The charges against Evans arose from allegations that, in the early morning hours of August 6, 1997, in an alleyway on Lathrop Street in the City of Buffalo, Evans forcibly raped Lucinda Archer and assaulted her with either a board or a brick. (Appellant's Appendix to Fourth Department (hereinafter "Appendix") at 8.)

Prior to his trial, Evans moved to suppress certain evidence and statements, to wit: a bloody t-shirt, long black hairs, his statements to the police at the time of his stop on August 6, 1997, and statements he made at the Office of the District Attorney on February 11, 1998. A Huntley/suppression hearing was conducted on August 14, 1998, and the

---

[1] In response to the Petition (Docket No. 1), Respondent filed an Answer (Docket No. 8) and Memorandum of Law (Docket No. 9), and submitted the state court records for this Court's review ("Records"). Petitioner was afforded the opportunity to respond to the Answer, but did not do so.

1

parties submitted supporting memoranda thereafter.  On October 6, 1998, New York State Supreme Court Justice Buscaglia issued a Decision and Order granting Evans' motion to suppress statements made on February 11, 1998 and denying the motion in all other respects. (Appendix at 88-93.)

The trial testimony is as follows.  On August 5, 1997 and into the early morning of August 6, 1997, Lucinda Archer ("Archer") was at the home of friends on Kosciaszko Street drinking beer and watching TV.  T. 65-66.[2]  All told, she had two 12-ounce beers and three or four 40-ounce beers that day.  T. 91-93.  After leaving her friends' home, Archer stopped to use a pay phone on Sycamore.  T. 66.  While she was on the phone, a friend named Pedro came by and Archer agreed to walk with him to a store on Broadway.  T. 66-67.  It was then around 2:00 a.m.  T. 117.

As she was walking and talking, Archer noticed that Pedro was not answering.  T. 67.  Someone then grabbed her from behind, dragged her between two houses, hit her repeatedly with something hard, pulled off her clothes and raped her.  T. 68-69.  She did not see her attacker's face because there was blood in her eyes.  T. 69-70.  The attacker then ran off and Archer called 911, first from a pay phone and then from a Kosciaszko Street home.  T. 70-74.  When the police arrived on Kosciaszko Street, Archer told them that Pedro, the last person she had seen, had attacked her.  T. 75.  Archer also implicated Pedro in a statement to police the following day.  T. 117.

At about 2:55 a.m. on August 6, 1997, Officers Gerald Sullivan and Ralph Skinner were in a patrol car on Walden Avenue when they noticed a black male, later identified as

---

[2]  Citations to "T. __" refer to the trial transcript.

Evans, standing on a street corner with a bulge under his shirt.  T. 128-29; HT. 6.[3]  The officers made a U-turn to investigate. T. 129, 221; HT. 7.  Evans began walking away from the police car and discarded the item he had under his shirt.  T. 129-130, 403-404; HT. 7.  The officers stopped Evans, asked his name, and retrieved the item he had discarded—a blood stained t-shirt.  T. 130-133; HT. 8-9.

Evans gave the police his name and stated that he had parole papers for identification, but was unable to produce them. T. 135-136, 404-405, 447; HT. 20.  Evans first denied but later admitted that the recovered t-shirt was his, explaining that it was bloody because he had been in a fight.  T. 134, 405-406, 444; HT. 9.  While speaking to Evans, Officer Sullivan observed that Evans had several long black hairs stuck in the zipper area of his pants and mud on his jeans.  T. 137, 153; HT. 9-10.

The officers then heard a radio call of a rape at 161 Kosciaszko Street.  T. 136; HT. 10.  They took Evans to that address, thinking that he might be the perpetrator.  Archer came out of the house to look at him, but did not identify Evans as her attacker.  T. 100, 136; HT. 10.

The officers asked Evans to return with them to the station house.  T. 138; HT. 10.  Once there, Evans was given his Miranda rights and did not object to police taking the t-shirt and the hairs from his zipper area.  T. 138; HT. 10-11.  When asked how he got those hairs there, Evans stated he had been with a girl earlier in the evening.  T. 138.  Evans was not placed under arrest and was released after the hairs were retrieved.  T. 138; HT. 12.

---

[3]  Citations to "HT. __" refer to the transcript of the August 14, 1998 Huntley/suppression hearing.

The prosecution presented proof that Evans' identification papers and other papers belonging to him were found at the scene of Archer's assault (T. 165-166, 347-352), the blood on the shirt discarded by Evans could have been Archer's (T. 280-281) and the hairs taken from Evans' zipper exhibited the same microscopic characteristics as Archer's head hair (T. 286-90). The prosecution also produced Richard Golden, a convicted burglar, who testified that he had spent several months with Evans during which time Evans told him he had sex with a woman in an alley, there was a scuffle and the woman was hit, Evans lost his ID, and the woman had identified some Spanish guy instead of him.  T. 319-326.

Evans testified in his own defense, claiming that he met Pedro for the first time in the early morning hours of August 6, 1997, that it was Pedro who assaulted Archer and that Evans stopped the assault by pulling Pedro off of her.  T. 390-401.

The jury convicted Evans of rape in the first degree and assault in the second degree. (Appendix at 3.)  He was sentenced as a persistent violent felony offender to two concurrent terms of incarceration of 25 years to life.  *Id.*

By Notice dated February 15, 1999, Evans timely appealed to the New York State Supreme Court, Appellate Division, Fourth Department ("Appellate Division").  Represented by counsel, Evans challenged his conviction on four grounds: 1) the Supreme Court erred in refusing to suppress physical evidence seized from him; 2) the evidence is legally insufficient to support his conviction; 3) his constitutional rights were violated by the Supreme Court's Sandoval ruling, prosecutorial misconduct and ineffective assistance of counsel; and 4) his persistent violent felony offender status was not sufficiently proven and his sentence was harsh and excessive.  (Records, Ex. B, Appellant's Brief.)

On December 21, 2001, the Appellate Division issued a decision affirming the

4

judgment of the trial court.  People v. Evans, 289 A.D.2d 994 (4th Dep't 2001).  Citing New

York's contemporaneous objection rule, N.Y. CRIM. PROC. L. § 470.05(2), the Appellate

Division found that Evans had failed to preserve for review the issues of the legal

sufficiency of the evidence and prosecutorial misconduct. *Id*.  The Court expressly rejected

each of Evans' remaining arguments. *Id.*

Evans timely sought leave to appeal to the New York Court of Appeals, urging the

same grounds for relief raised at the Appellate Division. (Records, Ex. C.)  The Court of

Appeals denied leave to appeal on February 14, 2002 (*Id.*) and Evans' conviction became

final on May 15, 2002, the day on which his time to seek direct review by writ of certiorari

to the United States Supreme Court expired.  Walker v. Artuz, 208 F.3d 357, 358 (2d Cir.

2000), *rev'd on other grounds sub nom.* Duncan v. Walker, 533 U.S. 167, 121 S. Ct. 2120,

150 L. Ed. 2d 251 (2001).

The instant petition was received at the United States District Court, Southern

District of New York's pro se office less that one year thereafter, on March 17, 2003, and

therefore is timely.[4]   In his petition, Evans claims five grounds for relief: 1) the police

illegally seized evidence from him; 2) the evidence presented at his trial was insufficient

to support a conviction and the verdict was against the weight of the evidence; 3) the trial

court's erroneous Sandoval ruling, the prosecutor's prejudicial remarks in summation, and

defense counsel's ineffective representation denied him his rights to due process and a fair

trial; 4) his persistent violent felony offender status was not sufficiently proven and his

sentence was harsh and excessive; and 5) he was unlawfully stopped and detained without

---

[4]  This case was transferred to the Western District of New York on May 28, 2003.

reasonable suspicion.[5]  Evans' petition contains little or no articulated basis for his various claims.   Instead, Evans refers the Court to the arguments made on his behalf to the Appellate Division.

Respondent concedes that the petition is timely and that Evans has exhausted his state court remedies with respect to the issues raised therein. (Docket No. 9 at 3).

## III.  APPLICABLE LAW

### A.     Law Governing Habeas Corpus

Under 28 U.S.C. § 2254(a), federal habeas review is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Thus, errors of state law are not subject to review in a habeas proceeding.  *See, e.g.*, Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). To be entitled to habeas relief, a petitioner must demonstrate that the challenged conviction resulted from a state court decision that violated federal law. *Id.* at 68.

A petition for a writ of habeas corpus may be granted with respect to a claim that has been adjudicated on the merits in the state courts if the court's determination: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts

---

[5]  This last ground was not separately articulated in Evans' state court appeals, but was discussed in the context of the first question presented.  Appellate counsel argued that because the police unlawfully stopped and detained Evans, the physical evidence that flowed from that illegality should have been suppressed as "fruit of the poisonous tree."

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An adjudication "on the merits" within the meaning of 28 U.S.C. § 2254(d) occurs when the state court decision "finally resolve[s] the parties' claims, with res judicata effect," and is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (internal citations and quotation marks omitted).  As long as the foregoing circumstances are met, a claim will be considered "adjudicated on the merits" even if the state court decision does not reference federal law and no relevant federal cases are cited.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) (internal quotation marks omitted).

**B.      Procedural Default**

Where a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default constitutes an adequate and independent ground for the state court decision.  *See, e.g.*, Coleman v. Thompson, 501 U.S. 722, 729-30, 749-50, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  A procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (citations omitted); *accord* Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004); Fama v. Commissioner of Correctional Servs., 235 F.3d 804, 809 (2d Cir. 2000).

# IV. DISCUSSION

## A.    Dismissal of Procedurally Defaulted Claims

On direct appeal, the Appellate Division expressly found Evans' contentions that the evidence is legally insufficient to support the conviction and he was denied a fair trial due to prosecutorial misconduct were not preserved for review, citing N.Y. CRIM. PROC. LAW § 470.04(2). People v. Evans, 289 A.D.2d 994 (4th Dep't 2001). That statutory provision, known as New York's contemporaneous objection rule, provides in relevant part that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial . . . is presented when a protest thereto was registered . . . at the time of [the] ruling . . . ."

Because the Appellate Division's rejection of these two claims was based on a procedural failure, the ruling constitutes an "independent" state law ground for the decision. Garcia v. Lewis, 188 F.3d 71,77 (2d Cir. 1999). The remaining question, then, is whether this procedural ground is "adequate" to preclude federal habeas review of the claims.

"[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." Id. (quoting Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991)). A determination of adequacy must be made in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee v. Kemna, 534 U.S. 362, 386-87, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002)). The Second Circuit has set forth "guideposts" for making this

determination:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 381-85).

The Second Circuit has noted that the first consideration "is not very relevant in cases where [courts] are reviewing application of the 'contemporaneous objection' rule. That is, the lack of objection by a party 'would not, almost by definition, be mentioned by the trial court.'" Monroe v. Kuhlman, 433 F.3d 236, 242 (2d Cir. 2006) (quoting Cotto, 331 F.3d at 242). Indeed, it would be atypical for a trial court to base a decision on the absence of an objection and, under such circumstances, consideration of what would have transpired with perfect procedural compliance generally would amount to sheer speculation. Thus, this factor does not weigh in Evans' favor.

As for the second factor, the Supreme Court long has recognized that the contemporaneous objection rules codified in state laws serve legitimate state interests in ensuring that judges are promptly alerted to errors at the time of trial. See Wainwright v. Sykes, 433 U.S. 72, 88, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (noting the "many interests" such rules serve, such as "enabling the record to be made . . . when the recollections of witnesses are freshest," enabling the judge "to make the factual determinations necessary for properly deciding the federal constitutional question," and "making a major contribution to finality in criminal litigation" by leading to the avoidance of

constitutional error).  Similarly, the New York Court of Appeals has explained that New York's contemporaneous objection rule "requires, at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error."  People v. Luperon, 85 N.Y.2d 71, 78 (1995).  Moreover, on the specific issues presented in this case, state case law indicates that compliance with the contemporaneous objection rule is demanded.

The Court of Appeals consistently has held that a protest regarding insufficiency of the evidence must be specifically directed at the alleged error so as to provide the opportunity for a cure; a general motion to dismiss will not suffice.  People v. Finger, 95 N.Y.2d 894, 895 (2000); People v. Gray, 86 N.Y.2d 10, 19-21 (1995).  Here, Evans' counsel moved to dismiss the charges at the close of the State's case "on the grounds that the People have not made a prima facie showing."  T. 385.  In other words, counsel made a general motion to dismiss.  After the defense rested, Evans' counsel simply sought to "renew the motions I made earlier." T. 467-68.  Counsel did not, at either juncture, identify a specific rationale or basis for the motion, as required.

Likewise, New York's courts uniformly have held that for a claim of prosecutorial misconduct on summation to be preserved for review, an objection must be registered at trial.  People v. Lee, 16 A.D.3d 704, 705 (2d Dep't), lv. denied, 4 N.Y.3d 887 (2005); People v. Klavoon, 207 A.D.2d 979, 980 (4th Dep't), lv. denied, 84 N.Y.2d 908 (1994); People v. Parsons, __ A.D.3d __, 816 N.Y.S.2d 271 (4th Dep't 2006).  Here, defense counsel made no objection to the prosecutor's summation.  T. 483-515.  Thus, the second

10

factor weighs against Evans as to both of his procedurally defaulted claims.

With regard to the final factor, the contemporaneous objection rule required nothing more than that Evans voice a timely objection to purportedly unconstitutional conduct. While the "realities of trial" can engender any number of complicated issues, this is not one of them. Evans' counsel heard the entirety of the prosecution's case and summation, and had ample opportunity to enter appropriate motions or objections. Nothing complex was required to adhere to the state's legitimate and long-standing rule.

As no factor weighs in Evans' favor here, the failure to object at trial to the sufficiency of the evidence and the prosecutor's summation is an independent and adequate bar to federal habeas review of these claims. Evans has made no attempt to show cause or prejudice, and he has not adduced new evidence tending to show that he is actually innocent of the charges on which he was convicted. Accordingly, federal habeas review of the sufficiency of evidence and prosecutorial misconduct claims is precluded.

**B.    Dismissal of Claims not Cognizable on Habeas Review**

Respondent correctly notes that errors of state law that do not implicate federal constitutional issues are not subject to federal habeas review. Estelle, 502 U.S. at 67-68. Respondent contends that Evans' arguments regarding the weight of the evidence (part of ground 2), the trial court's Sandoval ruling (part of ground 3), the "harsh and excessive" sentence and persistent violent felony offender determination (ground 4), and the police stop from which evidence and statements were obtained (grounds 1 and 5) do not present federal constitutional issues and, therefore, are not cognizable claims under 28 U.S.C. §

2254.  This Court agrees for the reasons stated hereafter.

### 1.    The Weight of the Evidence

It is well-settled that a claim that the trial verdict was against the weight of the evidence does not present a federal constitutional issue.  <u>Bradley  v. Johnson</u>, 99-CV-086C, 2005 U.S. Dist. LEXIS 39193, at *32-33 (W.D.N.Y. July 1, 2005) (citations omitted). Cases interpreting the habeas statute consistently have held that it is for the jury and the state appellate court on direct review of the record to weigh and resolve conflicts in the evidence presented at trial.  *See* <u>Rodriguez v. Greiner</u>, 274 F. Supp. 2d 264, 267 (E.D.N.Y. 2003) ("A federal court is not a forum for redetermination of the outcome of a state criminal trial.") (*citing* <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied*, 528 U.S. 1170, 120 S. Ct. 1196, 145 L. Ed. 2d 1100 (2000)); <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996) (assessments of the weight of the evidence are for the jury and we defer to the jury's assessments on such issues); <u>Soto v. LeFevre</u>, 651 F. Supp. 588, 592 (S.D.N.Y. 1986) (issues of witness credibility are not to be redetermined by federal courts in habeas corpus proceedings).   Accordingly, Evans' claim that his guilty verdict was against the weight of the evidence is not a cognizable basis for habeas relief.

### 2.    The Trial Court's <u>Sandoval</u> Ruling

In a hearing pursuant to <u>People v. Sandoval</u>, 34 N.Y.2d 371 (1974), "the trial judge makes a determination as to whether any prior convictions or proof of any prior commissions of specific uncharged crimes or bad acts may be admitted into evidence at a criminal trial."  <u>Mercer v. Herbert</u>, 133 F. Supp. 2d 219, 231 n.14 (W.D.N.Y. 2001).  "A claim based on an alleged <u>Sandoval</u> violation . . . deals with an evidentiary question and

may present an issue for habeas relief, but only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right." Senor v. Greiner,00-CV-5673 (JG), 2002 U.S. Dist. LEXIS 17710, at *41 (E.D.N.Y. Sept. 18, 2002) (citations omitted).  Alleged trial court errors on evidentiary matters do not pose a federal constitutional issue unless the error resulted in a trial that "deprived the defendant of fundamental fairness," thereby violating due process.  Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988).  This Court agrees with respondent's contention that no constitutional issue exists here.

Prior to trial, defense counsel sought to preclude the prosecution from cross-examining Evans' as to each of six prior convictions. ST. 3-11.[6]  Justice Buscaglia ruled that, in the event Evans took the stand, the prosecutor could ask if Evans was convicted of felonies in 1982 and 1984, but could not ask about the nature of the convictions or the underlying facts. ST. 30-32.  The judge precluded the prosecutor from questioning Evans about all other convictions.  Id.  When Evans testified in his defense, his own attorney elicited the fact of the 1982 and 1984 felony convictions.  T. 412.  The prosecution did not make any reference to those convictions on cross-examination or in summation.

The test for determining whether an evidentiary ruling deprived a defendant of a fundamentally fair trial is whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without

---

[6]  Citations to "ST. __" refer to the October 20 and 21, 1998 transcript of the argument and ruling on the Sandoval motion.

it. <u>Roberts v. Graves</u>, 91 Civ. 6052 (MGC), 1992 U.S. Dist. LEXIS 7904, at *8-9 (S.D.N.Y. May 28, 1992) (citation and quotation marks omitted).   A single question on direct examination about two felony convictions occurring a number of years earlier does not implicate an error of constitutional magnitude.   Accordingly, the trial court's purportedly erroneous <u>Sandoval</u> ruling is not a cognizable basis for habeas relief on the record presented here.

### 3.    The Persistent Violent Felony Determination

Evans claims that "[t]he records in this case fail to establish whether or not [he is] in fact a persistent violent felony offender" (Petition at 5D).   He does not expressly allege in either his petition or the appellate brief he relies on that the trial judge's finding in this regard was incorrect or that any of the records of prior felony convictions offered by the prosecution (Appendix at 128-136) are erroneous.   Rather, Evans vaguely argued on direct appeal that the record was "unclear" and the People failed to meet their burden of proof. On review, the Appellate Division concluded "that the court properly sentenced defendant as a persistent violent felony offender in accordance with the procedure set forth in CPL 400.16." <u>People v. Evans</u>, 289 A.D. 2d at 995.

Even assuming Evans meant to challenge the correctness of the trial judge's decision in the instant petition, such determinations are matters of state law and "[f]ederal habeas corpus relief does not lie for errors of state law." <u>Jerrel v. Keane</u>, 93 CIV 7746 (MBM), 1995 U.S. Dist. LEXIS 16463, at *10  (S.D.N.Y. Nov. 7, 1995) (finding that the district court could not address a habeas claim challenging the petitioner's persistent violent felony offender designation because only constitutional issues can be considered);

14

*see also*, Sims v. Superintendent of Clinton Correctional Facility, No. 95-2412,1996 U.S. App. LEXIS 23206, at *2 (2d Cir. Sept. 3, 1996) (unpublished opinion) (claim that state court improperly relied on a 1980 conviction in determining persistent violent felony offender status presents a question of state law and is not a proper subject for a habeas corpus petition).   Accordingly, Evans' generalized claim of error with regard to his persistent violent felony offender designation is not subject to habeas review.   Even were this claim reviewable, it would be dismissed for the reasons stated in Point IV(B)(4), below.

### 4.    Evans' "Harsh and Excessive" Sentence

A petitioner's claim that a trial judge abused his discretion in sentencing generally is not a federal claim subject to review by a district court.   Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by claiming that state judge abused his sentencing discretion when he disregarded psychiatric reports) (*citing* Townsend v. Burke, 334 U.S. 736, 741, 68 S. Ct. 1252, 92 L. Ed. 2d 1690 (1948) (because petitioner's sentence was within limits set by statute, its purported severity would not be grounds for habeas relief)).   A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the range prescribed by state law.   White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Here, Evans was adjudicated a persistent violent felony offender and sentenced to two concurrent terms of twenty-five years to life.   New York's persistent violent felony offender provision is codified at § 70.08 of the Penal Law.   That statute applies to defendants who stand convicted of a violent felony as defined in N.Y. PENAL LAW § 70.02 and previously were convicted of two or more predicate violent felonies as defined in N.Y.

PENAL LAW § 70.04(1)(b).  Both crimes for which Evans stood convicted, rape in the first degree, a class B felony, and assault in the second degree, a class D felony, fall within the statutory definition of a violent felony offense.  *Id.* § 70.02(1)(a) and (c).  As noted above, Evans does not point to any errors relative to the predicate violent felonies accepted by the trial court.   Persistent violent felony offenders receive indeterminate sentences, the maximum of which is life and the minimum of which is prescribed by statute.  *Id*. § 70.08(3).   As Evans' concurrent sentences of twenty-five years to life fall within the sentencing parameters for the crimes for which he was convicted, his claim that his sentence is harsh and excessive is not reviewable by this Court in a habeas proceeding.

### 5.    The Allegedly Illegal Police Stop and Seizure of Evidence

In grounds one and five of his petition, Evans contends that the officers who stopped and frisked him lacked reasonable suspicion to do so, and that evidence and statements subsequently obtained by police should have been suppressed as the fruit of an illegal search or seizure.  Evans does not identify the purported constitutional violation, but this Court assumes he intends to implicate the Fourth Amendment.

"In Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), the Supreme Court held that 'where the State has provided an opportunity for full and fair litigation of a Fourth Amendment Claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.'" Hill v. Miller, 03-CV-1738 (FB), 2005 U.S. Dist. LEXIS 5939, at *4 (E.D.N.Y. Apr. 8, 2005) (*quoting* Stone, 428 U.S. at 494-95).   A petitioner is denied the opportunity to fully and fairly litigate his claim only (a) if the state

has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 95 F.2d 67, 70 (2d Cir. 1992) (citation omitted); *see also*, Applewhite v. McGinnis, 04 Civ. 6153 (PKC)(JCF), 2006 U.S. Dist. LEXIS 29189, at *6-7 (S.D.N.Y. May 15, 2006).

New York has a facially adequate corrective procedure for Fourth Amendment violations, Capellan, 95 F.2d at 70 n.1, which Evans was not precluded from using and did take advantage of. Prior to trial, defense counsel made a partially successful motion to suppress certain evidence and statements. HT. 1-39; Appendix at 88-93. Evans appealed the partial denial of his suppression motion and the Appellate Division ruled on the merits of his argument. Accordingly, Evans' Fourth Amendment claim for habeas relief is barred by Stone.

## C.   Merits of the Remaining Claim of Ineffective Assistance of Counsel

The only claim remaining, part of ground four of the petition, generally alleges that defense counsel's ineffectiveness violated Evans' constitutional rights. Evans directs this Court to Point Three of his appellate brief. (Petition at 5C.) Therein, appellate counsel identified four purported errors by defense counsel: 1) a prejudicial question posed during jury selection; 2) failure to make a hearsay objection regarding the police investigation of another subject; 3) failure to oppose redaction of the victim's medical records; and 4) failure to preserve an insufficient evidence argument for appellate review.

To prove a claim of ineffective assistance of counsel, Evans must show that: 1) his

17

lawyer's performance fell below an objective standard of reasonableness; and 2) that but for the errors of his lawyer, the result of his trial would have been different.  Strickland v. Washington, 466 U.S. 668, 687-89, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  This is a formidable standard in that it permits a wide range and variety of acceptable approaches for defending a criminal case, and carries with it a strong presumption that the challenged attorney conduct was reasonable.  Id. at 689.  As the Second Circuit has noted, "[t]he Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

> To determine whether a counsel's conduct is deficient, 'the court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance.' In gauging the deficiency, the court must be 'highly deferential,' must 'consider[ ] all the circumstances,' must make 'every effort . . . to eliminate the distorting effects of hindsight,' and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'

Id. at 198-99 (quoting Strickland, 466 U.S. at 688-90).  Generally, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if "there [was] no . . . tactical justification for the course taken."  United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curium).

As for prejudice resulting from inadequate counsel:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  To merit habeas relief, the defendant must show that the deficient performance prejudiced the defense.  The level of prejudice the defendant need demonstrate lies between prejudice that had some conceivable effect and prejudice that more likely than not altered the

18

> outcome in the case.   Thus the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   The Court defined reasonable probability as one that undermines confidence in the outcome.

Lindstadt, 239 at 204 (alterations in original, internal citations and quotation marks omitted).   The focus of the habeas court's inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.   Strickland, 466 U.S. at 696.

### 1.   Question During Jury Selection

During jury selection, defense counsel asked the following: "In the event that the people are unable to meet their burden of proving guilt of rape and assault in the first degree, is there anybody here who would be unable to acquit Mr. Evans for any reason whatsoever?". JST.[7] 170.   Evans urges that this question presumes that the People will meet their burden, thereby prejudicing the jury against him.

I find Evans' conclusory assertion to be completely without merit.   In this Court's view, defense counsel's question sought to ascertain that jurors were not biased in favor of the prosecution and would hold the prosecution to the appropriate burden of proof.   In short, to the extent counsel's question had any effect whatsoever, it likely would have been to Evans' benefit.

### 2.   Failure to Make a Hearsay Objection

Evans next claims his trial counsel erred in failing to object to police investigator

---

[7]   Citations to "JST. __" refer to the jury selection transcript.

Samuel Cotroneo's hearsay testimony regarding his interview of Pedro Valentin, the individual Archer identified as her attacker.  T. 75, 117.  Cotroneo testified that Pedro stated he went to bed at 12:30 a.m. on the night of the attack and didn't leave the house thereafter.[8]  T. 250-251.

The trial transcript reveals that from her opening statement on, Evans' trial counsel engaged in a strategy to cast Pedro as Archer's true attacker.  To that end, she emphasized Archer's identification of Pedro, Archer's failure to identify Evans in a show-up, and the police department's investigation of Pedro and its processing of crime scene evidence, both of which counsel sought to demonstrate were less than thorough.

When Cotroneo testified, counsel did not object to his brief recitation of Pedro's alibi statement,  but she did object, on hearsay grounds, to purported corroborating statements by Pedro's girlfriend and her children.  T. 251.  On cross-examination, counsel elicited from Cotroneo that he did not interview anyone but Pedro's family members or friends about his alibi, did not check Pedro's home for exits that he may have used unobserved, did not ask to see the clothing he wore on the night of the attack, and did not examine him for injuries he may have sustained in a struggle.  T. 255-258.

Under the circumstances and viewing the testimony as a whole, it was not objectively unreasonable for defense counsel to allow the jury to hear very limited testimony regarding the substance of Pedro's alibi so that she would have a basis to cross-examine Cotroneo on the thoroughness of his related investigation.

---

[8]  As noted at Point II, *supra*, Archer was assaulted shortly after 2:00 a.m. on August 6, 1997.

### 3.    Redaction of Medical Records

The hospital records of Archer's treatment after her attack contained two references to a prior sexual assault which the prosecution succeeded in having redacted. T. 193; Appendix at 64.  Defense counsel objected to the redaction, arguing that the information was relevant.  T. 193.  Evans contends that this objection was insufficient, and suggests that there were better arguments counsel could have made in light of his need to attack Archer's credibility.

It is well-settled that "the failure to make a meritless argument does not rise to the level of ineffective assistance."  United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir.), cert. denied, 516 U.S. 927, 116 S. Ct. 330, 133 L. Ed. 2d 230 (1995).  The arguments Evans now posits counsel could have made simply do not comport with governing law and, therefore, would have been meritless.

Under New York law, the admissibility of hospital records is limited to entries relating to the patient's diagnosis and treatment.  See CPLR 4518.  This rule consistently has been applied in assault and rape cases to preclude portions of the hospital record not relevant to the victim's diagnosis and treatment; frequently, the victim's description or identification of the perpetrator.  See People v. Thomas, 282 A.D.2d 827, 828 (3d Dep't 2001) (assault victim's statement to hospital personnel identifying her attacker was not relevant to diagnosis and treatment and should have been excluded); People v. Jackson, 124 A.D.2d 975 (4th Dep't 1986) (medical history in which victim detailed events leading to rape and identified her assailants by name was inadmissible hearsay).  Archer's report of an unrelated event for which she was not then seeking treatment was similarly inadmissible

21

under this standard.

Even were that not the case, use of a victim's prior allegation of rape is permitted for impeachment purposes only where there is a reasonable basis to believe the prior allegation may have been false.  *See, e.g.*, People v. Bridgeland, 19 A.D.3d 1122, 1123-24 (4th Dep't 2005); People v. Badine, 301 A.D.2d 178, 180 (2d Dep't 2002).  There was no suggestion at trial that Archer had previously lodged a false complaint and Evans has produced nothing to indicate that trial counsel could have had a good faith basis for such an argument.

### 4.     Failure to Preserve Insufficiency of the Evidence Claim for Appeal

As determined above, Evans' claim of insufficient evidence is procedurally defaulted.  He claims this default was the result of ineffective assistance of counsel.

Evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  Guilt beyond a reasonable doubt may be established by circumstantial evidence alone, United States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994), and the evidence must be reviewed as a whole, rather than on a piecemeal basis, United States v. Khan, 53 F.3d *cert. denied*, 516 U.S. 1042, 116 S. Ct. 697, 133 L. Ed. 2d 655 (1996).  Moreover, assessments of the weight of the evidence or the credibility of witnesses are for the jury, and not grounds for reversal on appeal.  United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993), *cert. denied*, 511 U.S. 1042, 114 S. Ct. 1565, 128 L. Ed. 2d 211 (1994) (citations omitted); *see also*, Fernandez v. Artuz, 97 Civ. 2989 (MGC),

2002 U.S. Dist. LEXIS 8261 (S.D.N.Y. May 10, 2002).  In sum, a petitioner challenging the sufficiency of the evidence in a habeas corpus proceeding "bears a very heavy burden." Fama, 235 F.3d at 813.

In his appellate brief, Evans concedes that Archer suffered a physical attack, but claims that the occurrence of a rape was not sufficiently proven at trial.  Specifically, Evans argues that there was no independent evidence of a sexual assault and that Archer's testimony is suspect because she had been drinking that evening.   Under section 130.34(1) of New York's Penal Law, "[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person by forcible compulsion."

Archer testified at trial that she was hit in the head and attempted to fight off a man who pulled off her clothing and put his penis in her vagina.  T. 68-70.  Archer also reported vaginal penetration to hospital personnel following her attack.  (Appendix at 64.)  Viewing Archer's testimony and statements to hospital personnel in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of rape in the first degree beyond a reasonable doubt.  Accordingly, Evans' argument that the evidence was legally insufficient to support a conviction is without merit.  As already noted, "the failure to make a meritless argument does not rise to the level of ineffective assistance."  Kirsh, 54 F.3d at 1071.

Viewing all of these alleged deficiencies in their totality, Evans has not shown that his trial counsel's performance fell below an objective standard of reasonableness such that his Sixth Amendment right to the effective assistance of counsel was violated. Therefore, his ineffective assistance claim is denied on the merits.

## IV. CONCLUSION

For the reasons stated, Evans' petition is denied in its entirety.

Because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the Court concludes that Evans has not made a substantial showing of the denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2), and accordingly  this Court denies a certificate of appealability.

This Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith.  As a result, this Court denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Evans must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit according to the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## ORDERS

IT HEREBY IS ORDERED, that the petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Docket No. 1), is DENIED.

FURTHER, that a certificate of appealability is DENIED.

FURTHER, that leave to appeal as a poor person is DENIED.

FURTHER, that the Clerk of this Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   September 26, 2006
            Buffalo, New York


                                                    /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge